CHARLENE A. GUNTER, EXECUTRIX OF THE ESTATE OF JACK P. GUNTER, DEC'SD. *v.* ROBBIE LAGRONE

5-6096                                                    488 S.W. 2d 18

Opinion delivered December 18, 1972

*William W. Green, George M. Callahan & Eudox Patterson,* for appellant.

*Tackett, Moore, Dowd & Harrelson,* for appellee.

LYLE BROWN, Justice. This suit was initiated by appellant Charlene Gunter, executrix of the estate of her husband, for fatal injury allegedly caused by appellee Robbie LaGrone. The trial court granted appellee's motion for summary judgment, hence this appeal from that order.

In the early morning hours of August 1, 1968, a dispute arose on the streets of Hot Springs between appellee and deceased. A scuffle ensued and appellee is alleged to have knocked the deceased to the sidewalk, which fall is said to have inflicted fatal injury. On February 13, 1969, appellant filed suit for wrongful death against appellee. Appellee's insurance carrier denied liability and on August 13, 1969 the executrix and the heirs of the estate of Jack Gunter entered into an agreement with appellee. That instrument was styled "Covenant and Trust Receipt Agreement", the body of which is as follows:

> This covenant, made and entered into by and between Charlene Gunter, individually and as Executrix of the Estate of Jack Gunter, deceased, and Jack P. Gunter, Jr., Jerry E. Gunter and Vickie Ann Gunter, hereinafter called GUNTERS, and Robbie LaGrone, hereinafter called LaGRONE, WITNESSETH:

WHEREAS, Gunters have filed an action in the Circuit Court of Garland County, Arkansas, No. 11,484, against LaGrone, seeking damages in the sum of $420,000.00 as a result of the death of Jack Gunter on or about July 31, 1968; and

WHEREAS, LaGrone has denied and does deny all and any liability in any cause of action that has now or may subsequently be filed by Gunters; and

WHEREAS, LaGrone had Texas standard home-owner's policy with The Western Casualty & Surety Company, Ft. Scott, Kansas, which policy was in full force and effect on July 31, 1968; and

WHEREAS, Under provisions of said policy, La-Grone was provided insurance coverage against liability to the extent of $50,000.00; and

WHEREAS, the said company has been placed on notice and has denied liability; and

WHEREAS, LaGrone desires to limit his exposure while specifically denying liability.

NOW, THEREFORE, for and in consideration of the sum of Twenty Thousand Dollars ($20,000.00) cash in hand paid by Robbie LaGrone, the receipt of which is hereby acknowledged, Gunters covenant, for themselves, their heirs, personal representatives and assigns, as follows:

1. That in Case No. 11,484, or any subsequent suit by amendment or otherwise resulting from the incident which occurred on or about the 31st day of July 1968, to pursue solely any proceeds that may be legally due from The Western Casualty & Surety Company, Ft. Scott, Kansas under the terms of the provisions of said policy exclusively.

2. That LaGrone, for himself, his heirs, personal representatives and assigns, is to be and shall be

held harmless from the requirement of payment of any of his personal funds, including funds of his estate, personal representatives or assigns.

It being the intention herein that by the payment of $20,000.00 by LaGrone to Gunters that Gunters, their heirs, personal representatives or assigns shall never make any other claim, other than under the aforementioned policy, demand, execution or garnishment upon any of the personal assets of LaGrone, his personal representatives, heirs or assigns.

3. Gunters further agree that LaGrone shall have the right to and shall fully cooperate with The Western Casualty & Surety Company in preparation of the defense of the policy and meet all requirements under the terms and conditions of the said policy.

4. That the sole purpose of this covenant is to assure LaGrone, individually and specifically, excluding any rights he or Gunters may have under the terms and provisions of said policy, from the payment of any further sums by himself, his heirs, personal representatives, or assigns, from his personal assets, even though said sums may be legally due as determined by any court, or otherwise. That in the event Gunters breach this covenant and seek payment from LaGrone, individually, his personal representatives, heirs or assigns, other than recovery upon or through him upon his homeowner's policy with The Western Casualty & Surety Company, that the amount of liquidated damages will be measured and determined by the exact amount Gunters seek to recover from LaGrone individually, his personal representatives, heirs or assigns.

5. As there is a conflict as to whether or not the death of Jack Gunter was or was not accidental or unintentional, and as LaGrone has covenanted to the payment of $20,000.00 to Gunters to limit his excess exposure or exposure, Gunters covenant with

LaGrone that in the event they recover any sum above $30,000.00 by collection upon the aforesaid homeowner's policy, that they will hold in trust and reimburse LaGrone for any sum recovered above $30,000.00 up to the initial payment of $20,000.00.

Within two weeks after the execution of the agreement the suit was dismissed without prejudice. One year later appellant filed another suit seeking damages for the death of Jack Gunter allegedly at the hands of appellee. Appellee Robbie LaGrone responded by filing a motion for summary judgment. The trial court granted the motion and we think correctly so. The agreement provided in substance (1) that a suit was anticipated wherein LaGrone would be the named defendant; (2) that appellant would pursue Western Casualty for any judgment recovered against appellee; (3) that neither appellee nor his estate would ever be held liable for any part of the judgment; and (4) that any recovery above $30,000 would be paid over to appellee (the insured) up to the amount he paid in settlement, namely, $20,000. It is the last provision that compels us to conclude that the agreement cannot be allowed to stand. There are certain fundamental reciprocal obligations between an insurer and insured, one of which is that one will not, to his advantage, voluntarily expose the other to liability. By the terms of the instrument the insured would be placed in an adversary position to that of his insurer. Additionally, the personal liability coverage in the policy (which was before the trial court) obligated the insurer "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay". We are unable to see how appellee could, in face of the immunity granted by the contract, become legally obligated to pay appellant anything.

Appellant contends that the agreement between the parties was a matter of defense to be presented at the trial and was not the proper subject for appellee's motion to dismiss by way of summary judgment. Appellant also asked for summary judgment on all issues except damages.

Therefore both parties put the question of summary judgment squarely before the court.

Affirmed.